In re Joseph LIBERATI, Ind. t/a Joseph Liberati, Sewer Bricklayer Contractor Sanitary & Storm Drainage, Debtor.

RELIANCE INSURANCE COMPANY, Plaintiff,

v.

Joseph LIBERATI, individually trading as Joseph Liberati, Sewer Bricklayer Contractor Sanitary and Storm Drainage, Debtor, and Norman Ackerman, Trustee.

Bankruptcy No. 80–00670K.
Adv. Nos. 80–0497K, 80–0498K.

United States Bankruptcy Court,
E. D. Pennsylvania.

May 11, 1981.

Jeanne Ward Ryan, Philadelphia, Pa., for plaintiff.

Norman Ackerman, Philadelphia, Pa., Trustee.

Edward A. Savastio, Upper Darby, Pa., for debtor.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before the Court is the debtor's motion to dismiss the complaints of Reliance Insurance ("Reliance") objecting to the discharge of a debt owed it and for relief from the automatic stay. Because we find that Reliance has established a *prima facie* case that the debt may be non-dischargeable, the motion to dismiss will be denied.[1]

Reliance is engaged in the business of providing surety bonds. The debtor, Joseph Liberati, in connection with his construction business, requested the bonding services of Reliance. On April 18, 1974 a "continuing agreement of indemnity—contractor's form" was purportedly signed by Joseph and Maria Liberati. Joseph Liberati has admitted that he signed his wife's name to the indemnity agreement thereby agreeing to indemnify Reliance against loss, damages and expenses incurred as a result of a claim against the surety bonds. Reliance continued to execute and deliver Performance and Payment Bonds in connection with Liberati's construction projects and eventually sustained a $181,000 loss as a result of unfinished work and unpaid bills.

By Order dated September 22, 1980, counts III and IV of a Complaint for Relief from Stay filed by Reliance were consolidated with the instant Complaint in the nature of exceptions to discharge. Trial was held on October 9, 1980. At the conclusion of plaintiff's case, debtor filed the instant motion to dismiss.

Reliance argues that Liberati, by forging his wife's name on the indemnity agreement, induced Reliance to provide bonds for him; that the misrepresentation involved was relied upon by the surety each time it executed and delivered said bonds; and that actual fraud was present. Reliance contends that § 523(a)(2) of the Code excepts such a debt from discharge.

The established law relating to dischargeability of debts under § 17(a) of the Bankruptcy Act, has, with slight modification, been incorporated into the dischargeability section of the new Code. *In re Duiser*, 8 B.R. 397 (Bkrtcy., W.D.Va.1981). Accordingly, the existing case law construing § 17 of the Act is applicable to and should be followed in the resolution of dischargeability questions under § 523(a)(2). *In re Jones*, 3 B.R. 410, 6 B.C.D. 68 (Bkrtcy., W.D.Va.1980); *In re Tomeo*, 1 B.R. 673 (Bkrtcy., E.D.Pa.1979).

Existing case law, when read with § 523(a)(2), provides that the creditor, in order to prevail, must establish (1) that materially false representations were made; (2) that the representations were made with the intention and purpose of deceiving the creditor and constitute actual fraud; (3) that the creditor reasonably relied on such representations; and (4) that the creditor sustained the damage alleged as the proximate result of the representations having been made. *See* 11 U.S.C. § 523(a)(2); *In re Matera*, 592 F.2d 378 (7th Cir. 1979); *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re Tomeo, supra; Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967).

The question of dischargeability of debts in bankruptcy is a federal question. *In re Barrett*, 2 B.R. 296 (Bkrtcy., E.D.Pa. 1980). The degree of proof which the plaintiff must offer in order to except a debt

---

1. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.

from discharge is that degree of evidence which is "clear and convincing." *In re Tomeo, supra.*

 In the case *sub judice*, debtor has admitted that he signed Maria Liberati's name to the indemnity agreement.[2] Maria Liberati has testified that she did not sign the agreement, did not give her husband permission to sign for her and in fact, did not learn of the execution of the agreement until 1975. Liberati had an awareness of the falsity or potential for falsity when he signed Maria Liberati's name thereby hoping to bind her individually to the indemnity agreement. At the time of the signings, there was apparent marital discord as evidenced by the filing of a complaint in divorce in 1972. It has been held that the intent to deceive may be inferred from the totality of the circumstances. *In re Schlickmann*, 6 B.R. 281 (Bkrtcy., D.Mass. 1980). From the evidence presented, we conclude that intent to deceive has been shown, or at the very least, may be inferred.

Reliance has also established that the bonds on which the losses were sustained were written in reliance on the genuineness of the indemnity agreement purportedly signed by debtor and Maria Liberati. Testimony of two (2) employees of Reliance indicated that the bonds would not have been written nor approved if there had been no indemnity agreement signed by both debtor and his wife. Clearly, the creditor has made a prima facie showing that the debtor made a false representation on which the creditor relied to its detriment. When such a showing has been made, the burden of production, i. e., the burden of going forward with evidence to show that the debtor had no intent to deceive the creditor, shifts to the debtor. *See In re Matera, supra; In re Tomeo, supra.* As explained by the court in *In re Tomeo*:

What happens mechanically then, is this: Once the creditor has made its prima facie case, a presumption arises that the debtor made the representations with "intent to deceive." At that point, the burden of going forward with evidence to the contrary (not the burden of persuasion) shifts to the debtor.

1 B.R. at 678.

Having found that creditor, Reliance, has made a prima facie showing that the debt in question should be excepted from discharge, the burden of going forward has shifted to the debtor. An order will be entered denying debtor's motion to dismiss and setting a hearing, at which time debtor will have an opportunity to meet his burden of going forward.

---

**2.** Answer to complaint objecting to discharge, ¶ 12.