**FIDELITY FINANCIAL SERVICES, INC., Plaintiff–Appellant,**

v.

**Patricia Elaine CORNELL–COOLEY, Defendant–Appellee.**

**In re Patricia Elaine CORNELL– COOLEY, Debtor.**

**No. IP 90–2161 C.**

United States District Court, S.D. Indiana, Indianapolis Division.

June 15, 1993.

William F. Thompson, Robert B. Turner, Indianapolis, IN, for plaintiff.

Joseph C. Lewis, Jr., Timmons Endsley Chavis & Lewis, Hollie B. Boyd, Jr., Indianapolis, IN, for defendant.

Kenneth C. Meeker, U.S. Trustee, Indianapolis, IN.

Susan B. Jones, Indianapolis, IN, Trustee.

## ENTRY

BARKER, District Judge.

Fidelity Financial Services appeals the bankruptcy court's denial of its motion for summary judgment and adverse dischargeability determination. The appeal has been

fully briefed, and based on a review of the parties' filings, the record, and the relevant case law, it is ORDERED that the judgment of the bankruptcy court is AFFIRMED in part and VACATED and REMANDED in part.

*I. Background*

On July 3, 1987, Patricia Elaine Cornell–Cooley, an experienced real estate agent, executed and delivered to Fidelity Financial Services a promissory note/mortgage for the amount of $47,503.26, payable in 24 monthly payments of $484.12 and one balloon payment of $35,884.38.

On June 9, 1989, Cornell–Cooley asked Fidelity how much it would cost to pay off the note early, and Fidelity told her that as of June 16, 1989, it would cost $36,925.21. Cornell–Cooley made no further payments on the note, yet, on June 23, 1989, when Cornell–Cooley again requested a pay off figure, Fidelity told her that as of June 30, 1989, it would cost $34,439.33 to pay off the note.

On June 27, 1989, Cornell–Cooley sold the mortgaged real estate to a third party and tendered a check to Fidelity for $34,-439.33. Fidelity accepted that check, and, in turn, gave Cornell–Cooley a receipt stamped "paid in full." By July 10, 1989, Fidelity realized its mistake and notified Cornell–Cooley that the actual balance due on the debt as of June 30, 1989 was $37,-439.33 and that the tendered check was $3,000 short.

One month later, having not received an additional $3,000 from Cornell–Cooley, Fidelity filed a complaint in state court seeking payment on the note. In its complaint, Fidelity omitted that it had misinformed Cornell–Cooley about the amount due on the note and accepted Cornell–Cooley's check as "pa[yment] in full"; rather, Fidelity simply pleaded that Cornell–Cooley had defaulted on a promissory note. As for its

prayer for relief, Fidelity requested judgment in the amount of $37,351, plus interest of $16.60 per day. In addition, Fidelity requested "attorney's fees, the cost of this action, and all other expenses incurred in connection with this action," stating:

> 7. The plaintiff has incurred expenses in connection with the preparation of this action, which are reimbursable under the terms of the promissory note and real estate mortgage, including reasonable attorney's fees.[1]

Fidelity did not allege in the complaint that Cornell–Cooley had committed fraud, nor did it assert the substantive elements of a fraud claim.

Cornell–Cooley, proceeding *pro se,* filed an answer (denying that she was in default on the debt) and a counterclaim seeking Quiet Title to the real estate. The state court conducted a bench trial on Fidelity's complaint and issued written findings of fact and conclusions of law. As part of its factual findings, the court stated:

> 11. ... Fidelity provided Cornell with a pay-off statement dated June 23, 1989, indicating that the pay-off amount on the promissory note and real estate mortgage was in the sum of $34,439.33 and that the figure was good through June 30, 1989. The amount provided in this statement was in error. Knowing that the pay-off was in error, Cornell also provided [a title insurance company] with a copy of this document.

> \* \* \* \* \* \*

> 21. When Cornell delivered the Fidelity pay-off statement to [the title insurance company] showing a pay-off in the amount of $34,439.33, she knew the amount to be erroneous. Similarly, Cornell knew when participating in the closing on June 27, 1989, that the amount to be disbursed to Fidelity as set out in the closing statement was erroneous.

1. The note provided (in part):
> If I [Cornell–Cooley] default, as provided in the Note or Security Agreement, you may require me to make available for you all or part of the secured property either at my residence or a place convenient to both of us,

> [unreadable] may take action of repossession and sell the pro[unreadable] as outlined under the Indiana Uniform Commercial Code. I agree to pay reasonable attorney [unreadable] and the expense of retaking, holding or repairing the [unreadable] for sale....

As part of its legal conclusions, the court held:

> 3. The conduct of the Defendant Cornell constitutes fraud and deceit as to the Plaintiff Fidelity.
>
> 8. That judgment should enter in favor of the Plaintiff and against the Defendant Cornell in the principal amount of Three Thousand Dollars ($3,000), plus pre-judgment interest on the entire principal balance of the mortgage of $4,897.00, plus attorney fees of $6,902.00 for a total judgment of $14,799.00.

Cornell–Cooley did not appeal that decision; she did, however, file for bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana.

Upon discovering that Cornell–Cooley had petitioned for bankruptcy, Fidelity filed a complaint with the bankruptcy court seeking a judicial determination that the state court debt was non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Fidelity also filed a motion for summary judgment on that complaint claiming that Cornell–Cooley is collaterally estopped from denying that the state court debt was incurred by fraud. Fidelity argued in that motion:

> The present case meets all the requirements [of collateral estoppel]. The issue in the State Court was the fraud of Cornell. Evidence was presented on the issue by the defendant and the plaintiff at trial on February 22, 1990. The Court entered a valid and final judgment on April 18, 1990. Finally, the detmination [sic] of fraud was required in order to award Fidelity Financial Services, Inc. damages and attorney fees under the Indiana Code.

Cornell–Cooley opposed the motion, claiming that the state court found "fraud implied in law," not actual fraud, and that a finding of fraud, be it implied or actual, was not an essential or necessary finding.

The bankruptcy court summarily denied the motion for summary judgment and conducted an evidentiary hearing on the issue of whether the debt was dischargeable under § 523(a)(2)(A). At the conclusion of that hearing, on November 9, 1990, the bankruptcy court found, as a matter of fact, that Fidelity had failed to prove by clear and convincing evidence that Cornell–Cooley had obtained the $14,799 debt by false pretenses, false representations, or fraud. Accordingly, the bankruptcy court held that the debt was dischargeable. This appeal followed.

In its appeal brief, Fidelity asserts that the denial of summary judgment was improper, claiming that the state court's findings indicate that the issue of fraud was raised and litigated. Fidelity also argues that the fraud determination was essential to the state court judgment, stating:

> It is true that the state court judgment debt sought to be discharged arose out of a foreclosure action. However, Cornell ... defended the [state court] action by asserting tender and payment in full. Therefore it was the validity of the payoff statement and paid in full receipt that was the basis of the state court proceeding and its ultimate judgment. Essential to the determination of the validity of the statement and the receipt was the issue of whether Cornell had engaged in deceptive conduct with the intent to cheat Fidelity thus invalidating the pay off statement and paid in full receipt in the hands of Cornell ... which would entitle Fidelity to a lien on the real estate and the right to foreclose.... However, as to Cornell, the state court concluded that Cornell not only owed Fidelity $3,000, but also pre-judgment interest on the entire mortgage balance and attorney fees incurred in the foreclosure action. Thus, the resulting judgment was "created" by Cornell's intentional misrepresentation to [the title company] with the intent to cheat Fidelity.

Fidelity additionally argues that the bankruptcy court's finding of fraud was clearly erroneous, as it presented clear and convincing evidence of Cornell–Cooley's fraud and deceit.

Cornell–Cooley, in a brief filed by counsel on April 18, 1991, asserts that collateral estoppel does not apply for four reasons: (1) The state court finding of fraud was based on a preponderance of the evidence,

yet fraud in bankruptcy dischargeability proceedings must be determined by clear and convincing evidence; (2) the fraud issue was not essentially or necessarily decided in the state court proceeding, indeed, the state court judgment had nothing to with fraud; (3) the state court findings were not sufficiently detailed to trigger collateral estoppel; and (4) the state court found fraud not of the type involving moral turpitude or an intentional wrong, as required under § 523(a)(2)(A). Cornell–Cooley also asserts that the bankruptcy court's determination of no fraud is supported by the evidence, that Fidelity failed to put forth evidence of fraud involving moral turpitude or an intentional wrong, and that the evidence supports the bankruptcy court's finding that Fidelity suffered the $3,000 deficiency at the hands of its own negligence.

In a Reply brief filed on May 28, 1991, Fidelity agrees with Cornell–Cooley's assertion that the bankruptcy court had to find fraud by clear and convincing evidence, but argues that there was overwhelming evidence of fraud presented to the state and bankruptcy courts, and therefore the bankruptcy court's finding of no fraud was clearly erroneous. Fidelity reiterated that the state court's determination of fraud was an essential finding, claiming:

the fraudulent intent of Cornell was essential to and resulted in its final judgment against Cornell for not only the $3,000.00 but also for interest on the entire principal balance and for attorney fees. (The interest and attorney fees were a direct and proximate result of Cornell's affirmative defenses to the Fidelity state court action).

On June 18, 1991, Fidelity submitted a supplemental brief noting for the first time that nearly six months prior, the Supreme Court had decided that "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Cornell–Cooley filed an opposition brief to Fidelity's supplemental brief, claiming that

*Grogan* is not dispositive as "the ultimate question is whether the Bankruptcy Court had the right to review a State Court's ruling" and "the question of the evidentiary standard of proof or collateral estoppel are but erroneous issues."

## II. Discussion
### Collateral Estoppel

■ Collateral estoppel bars the resuscitation of questions that have been previously litigated.

To be precise, collateral estoppel requires that (1) the issue sought to be precluded is the same as that involved in a prior action, (2) the issue was actually litigated, (3) determination of the issue was essential to the final judgment, and (4) the party to be estopped was fully represented in the prior action.

*Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992) (citing *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987)). Some courts, because of the bankruptcy court's exclusive jurisdiction in determining dischargeability, give no collateral estoppel effect to state court determinations. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987). The majority of courts, including the Seventh Circuit, however, do apply collateral estoppel to discharge determinations where the state litigation actually and necessarily decided the relevant issue. *Id.*

Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments. . . . Thus, if the requirements for applying collateral estoppel have been satisfied, then that doctrine should apply to bar relitigation of an issue determined by a state court.

*Id.; see Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

*(1) the issue sought to be precluded is the same as that involved in a prior action*

To show that a debt is nondischargeable under § 523(a)(2)(A)—that the debt was in-

curred by "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A)—a creditor must prove three elements:

First, the creditor must prove that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation. *Carini v. Matera,* 592 F.2d 378, 380 (7th Cir.1979). The creditor also must prove that the debtor possessed scienter, i.e., an intent to deceive. *Gabellini v. Rega,* 724 F.2d 579, 581 (7th Cir.1984). Finally, the creditor must show that it actually relied on the false representation, and that its reliance was reasonable. *Carini,* 592 F.2d at 381.

*In re Kimzey,* 761 F.2d 421 (7th Cir.1985); *see In re Scarlata,* 979 F.2d 521, 525 (7th. Cir.1992). In Indiana, the elements of common law fraud entail:

(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightly relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of.

*Lawyers Title Ins. Corp. v. Pokraka,* 595 N.E.2d 244, 249 (Ind.1992).

 There is no indication that the state court found "fraud implied in law," whatever that is, as opposed to common law fraud, and a review of the two fraud standards reveals that Indiana fraud and § 523(a)(2)(A) fraud are essentially the same, if not identical. Cornell–Cooley's claim that Indiana fraud is somehow more innocuous than § 523(a)(2)(A) fraud, that bankruptcy fraud is malicious or intentional but Indiana fraud is not, is without merit. The first element of collateral estoppel is therefore present in this case.

### (2) the issue was actually litigated

In the bankruptcy court, Fidelity moved for summary judgment claiming, "The issue in the State Court was the fraud of Cornell. . . . Evidence was presented on the issue [of fraud]." Based on this general and relatively unsupported statement (Fidelity attached no affidavit or deposition or transcript excerpt in support of its assertion that the issue was litigated, it attached only its state court complaint, which makes no mention of fraud, and the state court final ruling), Fidelity asserts that the bankruptcy court should have concluded that the issue of fraud was actually litigated and essential to the state court judgment.

 One cannot ignore the fact that the state court did conclude that Cornell–Cooley committed fraud, yet that conclusion does not, as a matter of law, necessarily mandate the finding that the issue of fraud was "actually litigated." At best, it raises an inference that the issue was litigated. Nevertheless, Cornell–Cooley, by failing to contest that assertion or to allege that the issue had not been litigated, has effectively conceded this issue. Thus, for purposes of determining the propriety of denying Fidelity's motion for summary judgment, the court concludes that Fidelity has demonstrated that the issue of fraud was "actually litigated" in the state court proceeding. *But see Kathios v. General Motors Corp.,* 862 F.2d 944, 946 (1st Cir. 1988) (Interpreting New Hampshire law and citing the Restatement (Second) of Judgments § 27, comment d, court noted that "the preclusive effect of collateral estoppel extends only to matters that were actually litigated in the earlier case" and "as issue is actually litigated when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.' "); *Little v. United States,* 794 F.2d 484, 487 (9th Cir.1986) (party seeking to invoke collateral estoppel " 'must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action' ").

### (3) determination of the issue was essential to the final judgment

 Assuming the state court actually litigated the fraud issue and concluded that Cornell–Cooley did in fact make material

misstatements and commit deceit and fraud, Fidelity has nonetheless failed to demonstrate in its motion for summary judgment (or on appeal) that those determinations were *essential* to the state court's final judgment. The single issue presented in Fidelity's state court complaint was whether Cornell–Cooley owed Fidelity a debt of $14,799—a debt based on a defaulted mortgage. Cornell–Cooley's defense that she paid the debt and should not be held liable "because of [Fidelity's] irregular accounting practices" raises issues of waiver and estoppel, not fraud. It simply does not follow that because Cornell–Cooley denied that she defaulted on the note, a determination of fraud was essential to support the state court judgment.

■■■ Fidelity's assertion that it was awarded attorney's fees and interest based on fraud is erroneous. Fidelity sought attorney's fees under the Note provisions, not because Cornell–Cooley had allegedly committed fraud. *See* Ind.Code § 26–1–2–721 ("In all suits based on fraud or material misrepresentation, if the plaintiff recovers judgment in any amount, he shall also be entitled to recover reasonable attorney fees ..."); *Hudson v. McClaskey*, 597 N.E.2d 308, 308 (Ind.1992) (quoting Ind. Code § 26–1–2–721); *but see Swain v. Swain*, 576 N.E.2d 1281, 1285 (Ind.Ct.App. 1991) ("In order to merit an award of fees, a party must show that the other party has engaged in obdurate behavior in the prosecution of the litigation before the court, not in the commission of the underlying tort."). Further, pre-judgment interest is available where "damages are liquidated or readily ascertainable by fixed rules of evidence and accepted standards of valuation at the time the damages accrued." *Weisman v. Hopf–Himsel, Inc.*, 535 N.E.2d 1222, 1233 (Ind.Ct.App.1989); Ind.Code § 24–4.6–1–103. Thus, contrary to Fidelity's assertions, an award of pre-judgment interest is based on ascertainability of damages; an award of prejudgment interest has nothing to do with a finding of fraud.

■■■ Additionally, the policy underlying the doctrine of collateral estoppel is that "one fair opportunity to litigate an issue is enough." *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th Cir.1986) (citing *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir.1978)). Accordingly, collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the issue. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982); *Avitia v. Metropolitan Club of Chicago, Inc.*, 924 F.2d 689, 691 (7th Cir.1991); *see Jones v. Alton*, 757 F.2d 878, 885 (7th Cir.1985) (the "effective opportunity" to litigate an issue is an prerequisite to the operation of collateral estoppel). *Avitia v. Metropolitan Club of Chicago, Inc.*, 924 F.2d at 691 (while courts are reluctant to examine the fairness of a prior proceeding that comported with due process, courts are traditionally receptive to claims of unfairness when "the issue was not clearly relevant to the initial litigation and so the party being estopped had not incentive to vigorously litigate the question in the first instance"). "Critical to the application of collateral estoppel is the guarantee that the party sought to be estopped had the opportunity and the incentive to litigate the issue aggressively." *Kunzelman v. Thompson*, 799 F.2d 1172, 1177 (7th Cir.1986).

As discussed above, the issue of fraud was not essential to the state court proceedings. Assuming the issue of fraud was raised by Fidelity during the course of the trial, Cornell–Cooley would not have possessed the incentive to "vigorously litigate the question in the first instance" because that issue was non-essential at the time.

■■■ Fidelity has failed to demonstrate, either on appeal or in its motion for summary judgment, that a determination of fraud was essential to the state court judgment. As such, Fidelity has failed to carry its burden of showing that Cornell–Cooley was collaterally estopped from contesting whether she obtained the state court judgment by fraud, *see La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir.1990) (collateral estoppel

is an affirmative defense and the party wishing to invoke this doctrine has the burden of establishing its application), and the court therefore affirms the bankruptcy's denial of the motion for summary judgment.[2]

### Clear and Convincing Evidence

In bankruptcy, exceptions to dischargeability are to be construed strictly against a creditor and liberally in favor of the debtor. *In re Scarlata*, 979 F.2d 521, 524 (7th Cir.1992). The burden is on the objecting creditor to prove exceptions to the dischargeability provisions of the Bankruptcy Code. *Id.* When a district court reviews a decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless they are found to be clearly erroneous. *In re Kimzey*, 761 F.2d 421 (7th Cir.1985).

In November of 1990, the proper standard of proof in a fraud dischargeability proceeding in this circuit was "by clear and convincing evidence." *In re Kimzey*, 761 F.2d at 424. Two months after the bankruptcy judge concluded that Fidelity failed to prove by clear and convincing evidence that Cornell–Cooley incurred the state court debt by fraud, the Supreme Court resolved a split in the federal circuits by holding that "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. at 291, 111 S.Ct. at 661. While there is some possibility, albeit a slim one, that Fidelity proved its fraud claim by a preponderance of the evidence, but not by clear and convincing evidence since "the clear and convincing evidence standard lies between beyond a reasonable doubt and a preponderance of the evidence," *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *In re Rose*, 934 F.2d 901, 904 (7th Cir.1991), the court remands this issue to the bankruptcy court for further consideration, in light of *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See In re Walters*, No. 92–1572, 1993 WL 115211, 1993 U.S.App. LEXIS 8589 (7th Cir. April 14, 1993) (unpublished).

### III. Conclusion

The court AFFIRMS the bankruptcy court's denial of summary judgment based on collateral estoppel, and REMANDS this case to the bankruptcy court for a determination of whether Fidelity proved by a preponderance of the evidence that Cornell–Cooley incurred the state court debt by fraud. Cornell–Cooley's motion for oral argument is DENIED.

It is so ORDERED.

---

**2.** The court notes that lurking in this case is the issue of whether Cornell–Cooley was "fully represented" in the prior action—there is no indication that Cornell–Cooley, although an experienced real estate agent, was represented by counsel, had herself had any legal training, or recognized and appreciated the impact a state court judgment could have in a subsequent bankruptcy proceeding. *Compare Klingman v. Levinson*, 831 F.2d at 1296, n. 2 (while the court did not make clear whether the litigant was represented by counsel, the court found that the litigant was "fully represented during the state court proceeding" and "Mr. Levinson, 'an experienced attorney, was capable of protecting his interests in the prior action.'"). However, Cornell–Cooley has not raised this issue on appeal, nor did she assert this claim in the bankruptcy court. Accordingly, the court declines to address it here *sua sponte.*